**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THE GREEN PET SHOP ENTERPRISES, LLC<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MAZE INNOVATIONS, INC.<br><br>　　　　Defendant. | Civil Action No. 1:15-cv-01138<br><br>Honorable Matthew F. Kennelly |

**MAZE INNOVATION INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND OF THE PARTIES AND THE LITIGATION ....................................... 1

III. LEGAL STANDARD .......................................................................................................... 1

IV. CONSTRUCTION OF DISPUTED TERMS ...................................................................... 3

    A. Background Of The '218 Patent ................................................................................. 3

    B. Person Of Ordinary Skill In The Art .......................................................................... 3

    C. Claim Terms Of The '218 Patent To Be Construed ................................................... 3

        1. A Pressure Activated Recharging Cooling Composition ................................... 5

        2. Endothermically Activated…Upon The Application…Of Pressure ................. 7

        3. Endothermically Deactivated Upon The…Release of Pressure ........................ 9

    D. This Court Applies The *Phillips* Claim Construction Standard ................................ 11

V. CONCLUSION .................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Cuozzo Speed Technologies, LLC*,
    793 F.3d 1268 (Fed. Cir. 2015)..................................................................................................11

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
    628 F.3d 1359 (Fed. Cir. 2010)....................................................................................................2

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ...........................................................1

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
    357 F.3d 1340 (Fed. Cir. 2004)....................................................................................................2

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)....................................................................................................2

*Rheox, Inc. v. Entact, Inc.*,
    276 F.3d 1319 (Fed. Cir. 2002)....................................................................................................2

**Other Authorities**

42 C.F.R. § 42.100(b) ....................................................................................................................11

I.   **INTRODUCTION**

The claim terms of a patent are properly interpreted in view of the specification of the patent and the file history of the patent, including arguments the patent applicant made to obtain allowance.  Here, Plaintiff The Green Pet Shop Enterprises, LLC ("Green Pet") made unambiguous arguments to the U.S. Patent and Trademark Office ("USPTO") during prosecution of U.S. Patent No. 8,720,218 ("'218 Patent") to overcome the prior art and ultimately obtain allowance.  The Examiner relied on these statements and specifically noted, in his reasons for allowance, that the claims were allowable because they have the definitions Defendant Maze Innovations, Inc. d/b/a Hugs Pet Products ("Maze") proposes here.  Maze's proposed constructions are lifted verbatim from Green Pet's arguments to the USPTO and are wholly consistent with the intrinsic record.  Green Pet's proposed constructions walk away from the arguments that convinced the USPTO to allow the '218 Patent in the first place.  Accordingly, Maze's proposed constructions should be adopted.

II.   **BACKGROUND OF THE PARTIES AND THE LITIGATION**

Maze has been in the pet product business since 2009.  On February 5, 2015, Green Pet filed the instant lawsuit alleging that Maze infringes the '218 Patent, which is titled "pressure activated recharging cooling platform."  Green Pet is asserting Claims 15, 16, 18, and 19 of the '218 Patent (referred to herein as the "Asserted Claims").  On October 30, 2015, Maze filed an *inter partes* review petition with the Patent Trial and Appeal Board challenging the Asserted Claims.  The parties expect a decision on that petition by early May 2016.

III.   **LEGAL STANDARD**

Patent claims define the bounds of an invention, and district courts construe these claims as a matter of law to determine their meaning and scope.  *See Markman v. Westview Instruments,*

1

*Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The appropriate starting point for claim construction is always the words of the asserted claims themselves, for it is the claims of the patent that define the scope of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

"Claim language is generally given its 'ordinary and customary meaning,' that is, 'the meaning that the language would have to a person of ordinary skill in the art in question at the time of the invention.'" *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1368 (Fed. Cir. 2010). Since patent claims do not stand alone, but rather "are part of 'a fully integrated written instrument,' consisting principally of a specification," a person of ordinary skill in the art "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313, 1315 (citations omitted).

The prosecution history should also be consulted in construing the meaning of a claim term. *Phillips*, 415 F.3d at 1317. "[T]he prosecution history provides evidence of how the PTO and the inventor understood the patent." *Id.* Furthermore, "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention." *Id.* In this regard, arguments and amendments made during prosecution "to overcome prior art can lead to narrow claim interpretations because '[t]he public has a right to rely on such definitive statements.'" *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002) (citations omitted). Claims cannot "cover subject matter broader than that which the patentee itself regarded as comprising its inventions and represented to the PTO." *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004).

IV. **CONSTRUCTION OF DISPUTED TERMS**

A. **Background Of The '218 Patent**

The '218 Patent was filed on April 14, 2010, and issued on May 13, 2014. The '218 Patent discloses and claims so-called cooling platforms (or pads), which are structures designed to assist with cooling of an object that is warmer than and in contact with the pad. *See generally* JA0009. The purported novelty of the '218 Patent lies in the claims' requirement that "the pressure activated recharging cooling composition [is] endothermically activated and endothermically deactivated upon the application and release of pressure, respectively." JA0012; JA0032-JA0034 (adding quoted language to obtain allowance).

B. **Person Of Ordinary Skill In The Art**

From the "Field of the Invention" of the '218 Patent, and the '218 Patent itself, it is evident that a person of ordinary skill in the art at the time of filing of the '218 Patent had at least some experience with cooling pad techniques and a general understanding of heat transfer. *See, e.g.,* JA0009 ("invention relates to temperature controlled platforms").

C. **Claim Terms Of The '218 Patent To Be Construed**

Independent Claims 15, 16, 18, and 19 of the '218 Patent are asserted in this litigation and the disputed claim terms appear in each of these claims. JA0012. Claim 15 is representative for purposes of claim construction:

> 15. A cooling platform for cooling an object, the platform comprising:
>
> a temperature regulation layer, the temperature regulation layer having an angled segment formed by a top side and a bottom side at a predefined distance, and channels, wherein the channels form sides by contacting the top side with the bottom side; and

> **a pressure activated <u>recharging</u> cooling composition** within the temperature regulation layer, **the pressure activated recharging cooling composition <u>endothermically activated</u>** and **<u>endothermically deactivated</u> upon the application and release of pressure**, respectively.

JA0012 (emphasis added). Maze proposes construction of the claim phrases in bold in Claim 15 above. Green Pet proposes only to construe the portions of the claims phrases that are underlined above. The parties' proposed constructions for the disputed claim terms are set forth in the table below.

| Claim Term[1] | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| a pressure activated <u>recharging</u> cooling composition | a composition that undergoes a reversible chemical reaction upon the application and release of pressure | reversing |
| the pressure activated recharging cooling composition <u>endothermically activated</u>…upon the application…of pressure | the composition decreases in temperature when pressure is applied | absorbs heat |
| the pressure activated recharging cooling composition…<u>endothermically deactivated</u> upon the release of pressure | the composition increases in temperature when pressure is released | releases heat |

Green Pet has refused to provide constructions for the additional terms that form the complete phrases proposed by Maze as would normally be required by the Local Patent Rules. As a result, Maze has been unable to identify where additional disputes, if any, lie prior to filing its opening claim construction brief. Maze has endeavored to discern Green Pet's positions based on its contentions and discovery responses to date, and addresses its best guesses as to

---

[1] As previously discussed, Maze proposes the entire claim phrase be construed, while Green Pet only proposes to construe the underlined portion.

Green Pet's proposed constructions herein. Nonetheless, Maze will know Green Pet's positions on the additional terms for the first time only after reading Green Pet's responsive claim construction brief, and Maze reserves the right to address any additional constructions Green Pet proposes in Maze's reply brief as needed.

### 1. A Pressure Activated Recharging Cooling Composition

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| a pressure activated <u>recharging</u> cooling composition | a composition that undergoes a reversible chemical reaction upon the application and release of pressure | reversing |

Maze proposes that the phrase "a pressure activated recharging cooling composition" should be construed as "a composition that undergoes a reversible chemical reaction upon the application and release of pressure." This construction is consistent with and mandated by the intrinsic record.

The specification of the '218 Patent describes the "pressure activated recharging cooling composition" consistent with Maze's proposed construction:

> In another embodiment, the composition 110A can be activated by pressure, wherein the pressure of a[n] object sitting on the cooling platform 100 activates the composition 110A, triggering an endothermic process and subsequent cooling. Upon the release of that pressure, the composition 110A undergoes a subsequent recharge, essentially <u>the reverse of the initial reaction</u>. The above is consistent with Le Chatelier's principle, in that, <u>the reaction reverses</u> upon the application or absence of pressure.

JA0010 at 3:17-25 (emphasis added). Accordingly, the specification talks about an initial reaction that takes place with pressure and a reverse reaction that takes place when pressure is removed.

Green Pet confirmed to the USPTO during prosecution that this claimed reversible reaction is a chemical reaction. During prosecution of the '218 Patent, the claims were rejected

5

over the Rabenbauer, Gatten, Augustine, Omidian, and Dimmitt references. JA0112-JA0126. To overcome these rejections, Green Pet added the phrase "pressure activated recharging cooling composition" to every claim, either through amendment or by filing a new claim that recited this limitation. JA0057-JA0065. Pertinent to the Asserted Claims, Green Pet also added the language "the pressure activated recharging cooling composition activated and deactivated upon the application and release of pressure, respectively." JA0062-JA0064.[2] Green Pet then argued that its amendments overcame the prior art of record. With focus on the Omidian reference, Green Pet argued:

> More specifically, Omidian does not disclose a composition that decreases in temperature when pressure is applied and recharges when pressure is released; and as discussed with the Examiner, Applicant's suggested amendment, "a pressure activated recharging composition," would not be disclosed as well.

JA0094-JA0095. Green Pet echoed this argument later in its response:

> At the outset, Applicant respectfully submits that Omidian does not expressly, implicitly, or inherently disclose the property of cooling and recharging or a composition that decreases in temperature upon pressure activation; and recharges on the release of that pressure-as claimed in Applicant's invention…. Therefore, because the pressure activated recharging cooling composition is not disclosed, the rejection is rendered moot.

JA0101.

In explaining why Omidian does not disclose the claimed "pressure activated recharging cooling composition" Green Pet further explained that "as amended, Omidian does not disclose any terms identical or relating to the application and release of pressure to drive <u>a chemical reaction</u> to decrease and increase in temperature." JA0102 (emphasis added). Green Pet distinguished the "stretching/unloading" disclosures in Omidian from the claimed "pressure activated recharging cooling composition," stating that "Applicant respectfully disagrees that stretching and unloading discloses the application and release of pressure to drive <u>a reversible</u>

---

[2] Asserted Claims 15, 16, 18, and 19 are prosecution claims 21, 22, 24, and 25, respectively.

6

chemical reaction." JA0102 (emphasis added). Green Pet further stated that "stretching and unloading in Omidian refers to the elasticity and resiliency of the hydrogel hybrid," which "is not the same as the application and release of 'pressure,' further, the application and release of pressure to drive a chemical reaction." JA0102 (emphasis added).

Green Pet's arguments were successful in overcoming the art of record, including the Omidian reference. In doing so, Green Pet unambiguously repeated that the claim phrase "a pressure activated recharging cooling composition" necessarily requires a composition that undergoes a chemical reaction upon the application and release of pressure, and that this chemical reaction must be reversible. JA0101-JA0102. This is the construction proposed by Maze, and it is the only construction supported by the intrinsic record.

Therefore, consistent with the intrinsic record, "a pressure activated recharging cooling composition" should be construed as "a composition that undergoes a reversible chemical reaction upon the application and release of pressure."

    **2.    Endothermically Activated…Upon The Application…Of Pressure**

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| the pressure activated recharging cooling composition <u>endothermically activated</u>…upon the application…of pressure | the composition decreases in temperature when pressure is applied | absorbs heat |

Maze proposes that the phrase "the pressure activated recharging cooling composition endothermically activated…upon the application…of pressure" be construed as "the composition decreases in temperature when pressure is applied." This construction is consistent with and mandated by the intrinsic record.

7

As discussed above, to overcome prior art rejections, Green Pet added the following claim language: "the pressure activated recharging cooling composition activated and deactivated upon the application and release of pressure, respectively." JA0062-JA0064. The Examiner suggested, and Green Pet accepted, a further amendment to this language. Specifically, the Examiner proposed to replace "composition activated and deactivated" with "composition endothermically activated and endothermically deactivated." JA0032-JA0033. The issued claims include the amendment and the full language of the phrase for each of the Asserted Claims is "the pressure activated recharging cooling composition endothermically activated and endothermically deactivated upon the application and release of pressure, respectively." *See*, *e.g.*, JA0012 at Claim 15.

For purposes of this claim element, Maze has proposed that the phrase "the pressure activated recharging cooling composition endothermically activated…upon the application…of pressure" be construed. This is the portion of the claimed phrase that focuses on the composition being endothermically activated upon the application of pressure. During prosecution, Green Pet convinced the Examiner that this phrase meant "a composition that <u>decreases in temperature</u> when pressure is applied." JA0094-JA0095 (emphasis added). Green Pet made this argument in the context of distinguishing the claimed invention over the prior art Omidian reference. Green Pet made this same argument at least twice more during prosecution. For example, Green Pet stated that "Omidian does not expressly, implicitly, or inherently disclose…a composition that <u>decreases in temperature</u> upon pressure activation…<u>as claimed in Applicant's invention</u>. JA0101 (emphasis added). Green Pet further stated that in view of the claims "as amended, Omidian does not disclose any terms identical or relating to the application and release of pressure to drive a chemical reaction to <u>decrease</u>…<u>in temperature</u>." JA0102 (emphasis added).

8

Green Pet's arguments to the USPTO mandate that the phrase "the pressure activated recharging cooling composition endothermically activated…upon the application…of pressure" be construed as "the composition decreases in temperature when pressure is applied." This is the only construction supported by the intrinsic record and it is the construction the Examiner relied upon in allowing the Asserted Claims.

### 3.     Endothermically Deactivated Upon The…Release of Pressure

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| the pressure activated recharging cooling composition…<u>endothermically deactivated</u> upon the release of pressure | the composition increases in temperature when pressure is released | releases heat |

Maze proposes that the phrase "the pressure activated recharging cooling composition…endothermically deactivated upon the release of pressure" of Claims 15, 16, 18, and 19 of the '218 Patent be construed as "the composition increases in temperature when pressure is released." Like its "endothermically activated" counterpart, this construction is consistent with and mandated by the intrinsic record.

As discussed above, to overcome prior art rejections, Green Pet added the following claim language: "the pressure activated recharging cooling composition activated and deactivated upon the application and release of pressure, respectively." JA0062-JA0064. The Examiner suggested, and Green Pet accepted, a further amendment to this language. Specifically, the Examiner proposed to replace "composition activated and deactivated" with "composition endothermically activated and endothermically deactivated." JA0032-JA0033. The issued claims include the amendment and the full language of the phrase for each of the Asserted Claims is "the pressure activated recharging cooling composition endothermically

9

activated and endothermically deactivated upon the application and release of pressure, respectively." *See*, *e.g.*, JA0012 at Claim 15.

For purposes of this claim element, Maze has proposed that the phrase "the pressure activated recharging cooling composition…endothermically deactivated upon the release of pressure" be construed. This is the portion of the claimed phrase that focuses on the composition being endothermically deactivated upon the release of pressure. During prosecution, Green Pet convincingly argued to the USPTO that "endothermically activated" meant "a composition that decreases in temperature when pressure is applied." JA0094-JA0095. In the same vein, Green Pet argued that "endothermically deactivated" meant that the "composition…recharges when pressure is released." JA0094-JA0095; *see also* JA0101 ("a composition that decreases in temperature upon pressure activation; and recharges on the release of that pressure - as claimed in Applicant's invention."). Green Pet's arguments confirm that "recharges" is referring to an increase in temperature. Specifically, Green Pet argued that in view of the claims "as amended, Omidian does not disclose any terms identical or relating to the application and <u>release of pressure</u> to drive a chemical reaction to decrease and <u>increase in temperature</u>." JA0102 (emphasis added). This increase is temperature is the reverse of the initial reaction that Green Pet described as a decrease in temperature. JA0102; *see also* JA0010 at 3:17-25.

Green Pet's arguments to the USPTO mandate that the phrase "the pressure activated recharging cooling composition… endothermically deactivated upon the release of pressure" be construed as "the composition increases in temperature when pressure is released." This is the only construction supported by the intrinsic record and it is the construction the Examiner relied upon in allowing the Asserted Claims.

10

### D. This Court Applies The *Phillips* Claim Construction Standard

Green Pet may argue that the claim constructions proposed by Maze during *inter partes* review somehow impact this Court's legal analysis. This argument, however, misapprehends the applicable claim construction standards for the respective proceedings. During *inter partes* review, a claim is "given its broadest reasonable construction in light of the specification of the patent in which it appears." 42 C.F.R. § 42.100(b). This Court applies a different claim construction standard under *Phillips v. AWH Corp. In re Cuozzo Speed Technologies, LLC*, 793 F.3d 1268, 1278–79 (Fed. Cir. 2015). Indeed, Maze specifically noted in its *inter partes* review petition that its "position regarding claim scope is not to be taken as a concession regarding the appropriate scope to be given the challenged claims in a court or other adjudicative body or under different claim interpretation standards." Exhibit A at 17.

### V. CONCLUSION

For the reasons set forth above, Maze respectfully requests that this Court adopt its proposed constructions of the claims terms at issue.

Dated: January 20, 2016

Respectfully submitted,

/s/ Jason A. Engel
Jason A. Engel
Devon C. Beane
Stephanie J. Nelson
K&L Gates LLP
70 W. Madison Street, Suite 3100
Chicago, Illinois 60602-4207
Telephone: (312) 372-1121
Facsimile: (312) 827-8000

*Attorneys for Defendant Maze Innovations, Inc.*

**CERTIFICATE OF SERVICE**

It is hereby certified that on this 20th day of January, 2016, a copy of the foregoing document was filed electronically with the Clerk of Court to be served via the Court's Electronic Filing System upon the following counsel of record:

Maria C Granjean
Gordon & Rees, LLP
1 North Franklin St., Suite 800
Chicago, IL 60606
(312) 565-1400
Email: mgranjean@gordonrees.com

Reid Eric Dammann
Gordon & Rees LLP
633 West Fifth Street
52nd Floor
Los Angeles, CA 90017
(213) 576-5000
Fax: (213) 680-4470
Email: rdammann@gordonrees.com

Stephanie Frances Jones
Gordon & Rees Llp
1 North Franklin
Suite 800
Chicago, IL 60606
(312) 565-1400
Email: sfjones@gordonrees.com

Grant Blumenthal
Blumenthal Law Group PC
180 N. LaSalle Street
Suite 3700
Chicago, IL 60601
3129815055
Fax: 3124167963
Email: gblumenthal@blumenthal-law.com

              /s/ Jason A. Engel
                Jason A. Engel