**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THE GREEN PET SHOP ENTERPRISES, LLC | Civil Action No. 1:15-cv-01138 |
| Plaintiff, | Honorable Matthew F. Kennelly |
| v. | |
| MAZE INNOVATIONS, INC. | |
| Defendant. | |

**MAZE INNOVATIONS, INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................................. 1

  A.   Background Of The Parties And The Litigation ................................................. 1

  B.   The Patents-In-Suit.............................................................................................. 2

    1.   The '218 Patent ........................................................................................ 2

    2.   The '474 Patent ........................................................................................ 4

  C.   The Concurrent Proceedings At The Patent Office............................................ 5

III.   LEGAL STANDARD ....................................................................................................... 6

IV.   CONSTRUCTION OF DISPUTED TERMS .................................................................. 7

  A.   Person Of Ordinary Skill In The Art.................................................................. 7

  B.   Claim Terms Of The Patents-in-Suit To Be Construed ..................................... 8

    1.   Pressure ................................................................................................. 10

    2.   A Pressure Activated Recharging Cooling Composition....................... 11

    3.   Endothermically Activated . . . Upon The Application . . . Of Pressure ....................... 14

    4.   Endothermically Deactivated Upon The . . . Release of Pressure.................................. 16

V.   CONCLUSION .............................................................................................................. 17

## TABLE OF AUTHORITIES

### Cases

*Biovail Corp. Int'l v. Andrx Pharm., Inc.*
  239 F.3d 1297 (Fed. Cir. 2001) ................................................................................ 13

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*
  No. C-13-03587, 2014 WL 4802426 (N.D. Cal. Sept. 26, 2014) ............................... 7

*In re Cuozzo Speed Techs., LLC*
  778 F.3d 1271 (Fed. Cir. 2015) ................................................................................ 11

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*
  628 F.3d 1359 (Fed. Cir. 2010) .............................................................................. 6, 7

*Markman v. Westview Instruments, Inc.*
  52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ........................................ 6

*Phillips v. AWH Corp.*
  415 F.3d 1303 (Fed. Cir. 2005) .............................................................................. 6, 7

*Rheox, Inc. v. Entact, Inc.*
  276 F.3d 1319 (Fed. Cir. 2002) ................................................................. 7, 12, 15, 17

*Ryko Mfg. Co. v. Nu-star, Inc.*
  950 F.2d 714 (Fed. Cir. 1991) .................................................................................... 7

### Other Authorities

Gordon J. Van Wylen & Richard E. Sonntag
  *Fundamentals of Classical Thermodynamics* (3d ed. 1986) ..................................... 10

## I.      INTRODUCTION

The claim terms of a patent are properly interpreted in view of the specification of the patent and the file history of the patent, including arguments the patent applicant made to obtain allowance (i.e., the intrinsic record).  Plaintiff Green Pet Shop Enterprises, LLC ("Green Pet") made unambiguous arguments to the U.S. Patent and Trademark Office ("Patent Office") during the prosecution of U.S. Patent No. 8,720,218 ("the '218 Patent") and U.S. Patent No. 9,226,474 ("the '474 Patent") (collectively the "Patents-in-Suit") to overcome the prior art and ultimately obtain allowance.  The Examiner relied on these statements and specifically noted in his reasons for allowance that the claims were allowable because they have the definitions Defendant Maze Innovations, Inc. d/b/a Hugs Pet Products ("Maze") proposes here.  Green Pet's arguments to the Patent Office during prosecution of the Patents-in-Suit are consistent with the reasons that the Patent Trial and Appeal Board ("PTAB") refused to institute *Inter Partes* Review ("IPR") of the '218 Patent.

Maze's proposed constructions are lifted verbatim from Green Pet's arguments to the Patent Office and are entirely consistent with the intrinsic record, including the record before the PTAB.  Green Pet's proposed constructions, on the other hand, walk away from the arguments that convinced the Patent Office to allow the Patents-in-Suit in the first place and, contrary to Federal Circuit authority, do not assign meaning to each of the words in the claims. Accordingly, Maze's proposed constructions should be adopted.

## II.     FACTUAL BACKGROUND

### A.      Background Of The Parties And The Litigation

Maze has been manufacturing and selling its cooling gel mat products Green Pet accuses in this case since 2009 (notably, this was before Greet Pet even filed its applications for the Patents-in-Suit).  Nearly six years later, on February 5, 2015, Green Pet filed this case asserting

1

that Maze infringes the '218 Patent, entitled "Pressure Activated Recharging Cooling Platform."
Green Pet then filed the Amended Complaint on January 28, 2016, to assert the '474 Patent, a
continuation of the '218 Patent. With its Amended Complaint, Green Pet is asserting claims 15,
16, 18, and 19 of the '218 Patent and claims 1, 11, and 16–21 of the '474 Patent (collectively, the
"Asserted Claims").

### B.     The Patents-In-Suit

### 1.     The '218 Patent

The '218 Patent was filed on April 14, 2010, and issued on May 13, 2014. The '218
Patent discloses and claims so-called cooling platforms (or pads/mats), which are structures
designed to assist with cooling of an object. *See generally* JA0009. The alleged invention of the
'218 Patent lies solely in the composition within the cooling mat. Specifically, the '218 Patent
claims "a pressure activated recharging cooling composition [which is] endothermically
activated and endothermically deactivated upon the application and release of pressure . . ."
JA0001–13 at 5:53–57, 6:22–26, 6:51–55, 7:3–7, 7:19–23, 7:34–38, 7:49–53, 8:11–15, 8:29–33,
and 8:47–51. This limitation was added, by Examiner's Amendment, to overcome the prior art
of record during examination.[1] JA033–34. Despite the title of the '218 Patent being "Pressure
Activated Recharging Cooling Platform" (also added by amendment during prosecution (*see*
JA0041)), the sole discussion in the specification of pressure-activated compositions is the
following paragraph:

> In another embodiment, the composition 110A can be activated by pressure,
> wherein the pressure of a[n] object sitting on the cooling platform 100 activates
> the composition 110A, triggering an endothermic process and subsequent cooling.
> Upon the release of that pressure, the composition 110A undergoes a subsequent
> recharge, essentially the reverse of the initial reaction. The above is consistent
> with Le Chatelier's principle, in that, the reaction reverses upon the application or

---

[1]    An Examiner's Amendment is an amendment to the claim scope proposed by the Examiner,
rather than by the Applicant.

absence of pressure. In this embodiment, the composition 110A is comprised of: thirty percent carboxmethyl cellulose; twenty percent water; thirty-five percent polyacrylamide; and at least fifteen percent alginic acid. The aforementioned composition 110A also provides a cooling effect for an increased duration over other known compositions.

JA0011 at 3:17–30 (emphasis added).

During prosecution of the '218 Patent, the claims were rejected over the Rabenbauer, Gatten, Augustine, Omidian, and Dimmitt references. JA0112–126. To overcome these rejections, Green Pet added the phrase "pressure activated recharging cooling composition" to every claim, by amendment or by filing a new claim reciting this limitation. JA0057–65. Pertinent to the Asserted Claims, Green Pet also added the language "the pressure activated recharging cooling composition activated and deactivated upon the application and release of pressure, respectively." JA0062–64.[2] Green Pet then argued that its amendments overcame the prior art of record. With focus on the Omidian reference, Green Pet argued:

> More specifically, Omidian does not disclose a composition that decreases in temperature when pressure is applied and recharges when pressure is released; and as discussed with the Examiner, Applicant's suggested amendment, "a pressure activated recharging composition," would not be disclosed as well.

JA0094–95. Green Pet echoed this argument later in its response:

> At the outset, Applicant respectfully submits that Omidian does not expressly, implicitly, or inherently disclose the property of cooling and recharging or a composition that decreases in temperature upon pressure activation; and recharges on the release of that pressure-as claimed in Applicant's invention. . . . Therefore, because the pressure activated recharging cooling composition is not disclosed, the rejection is rendered moot.

JA0101.

In explaining why Omidian does not disclose the claimed "pressure activated recharging cooling composition," Green Pet seized on the fact that Omidian did not disclose a chemical

---

[2]    Asserted Claims 15, 16, 18, and 19 of the '218 Patent are prosecution claims 21, 22, 24, and 25, respectively.

reaction with the application of pressure and a reversible chemical reaction when the pressure is released. In particular, Green Pet argued, "as amended, Omidian does not disclose any terms identical or relating to the application and release of pressure to drive <u>a chemical reaction</u> to decrease and increase in temperature." JA0102 (emphasis added). Green Pet distinguished the "stretching/unloading" disclosures in Omidian from the claimed "pressure activated recharging cooling composition," stating that "Applicant respectfully disagrees that stretching and unloading discloses the application and release of pressure to drive <u>a reversible chemical reaction</u>." JA0102 (emphasis added). Green Pet further stated that "stretching and unloading in Omidian refers to the elasticity and resiliency of the hydrogel hybrid," which "is not the same as the application and release of 'pressure,' further, the application and release of pressure to drive <u>a chemical reaction</u>." JA0102 (emphasis added).

Green Pet's repeated arguments regarding an <u>initial chemical reaction</u> and a <u>reversible chemical reaction</u> are consistent with the disclosure in the specification (JA0011 at 3:17–30, discussed above), and were successful in overcoming the prior art of record, including the Omidian reference. In doing so, Green Pet unambiguously stated and successfully argued that the claim phrase "a pressure activated recharging cooling composition" requires a composition that undergoes a chemical reaction upon the application of pressure and that the chemical reaction is reversed upon the release of pressure. JA0101–102.

## 2. The '474 Patent

The '474 Patent was filed on March 26, 2014, and issued on January 5, 2016. The '474 Patent is a continuation of the '218 Patent. All of the disputed claim terms from the '218 Patent appear verbatim in the Asserted Claims of the '474 Patent. Notably, the '474 Patent is subject to a terminal disclaimer over the '218 Patent because the claims of the '474 Patent are not patentably distinct from the claims of the '218 Patent. *See* Dkt. No. 61, Green Pet's Amended

4

Answer to Counterclaim at ¶ 16 (admitting that the Examiner found the claims are not "patentably distinct from each other"). Absent the terminal disclaimer, the Examiner would not have allowed the '474 Patent in view of the '218 Patent. This means that the claims of the '474 Patent were allowed for the same reasons the claims of the '218 Patent were allowed, and Green Pet's arguments to the Patent Office for the '218 Patent apply equally for '474 Patent.

### C. The Concurrent Proceedings At The Patent Office

On October 30, 2015, Maze filed a Petition for *Inter Partes* Review (the "'117 IPR") with the PTAB challenging the claims of the '218 Patent. On April 20, 2016, the PTAB denied institution of IPR based on the construction of the term "pressure." JA0491–507. In particular, the PTAB construed the term "pressure" to mean "force per unit area." JA0497. Based on its construction of the term "pressure," the PTAB did not find that prior art anticipated or rendered obvious the claims because the disclosed transfer of heat between the pet and the mat occurs as a matter of temperature equilibrium, not as a matter of pressure. JA0497–500. In other words, the transfer of heat from the object to the mat in the prior art occurred when the object "contacted" the mat, not when it exerted pressure. *Id.* In reaching its conclusion, the PTAB found persuasive Green Pet's argument that the prior art only disclosed the transfer of heat upon contact without describing a reaction activated through the application of pressure. JA0499–500. This is entirely consistent with Green Pet's arguments during prosecution of the '218 Patent and the disclosure in the patent specification.

Maze filed for IPR of the '218 Patent because Green Pet broadly construed its claim scope to cover Maze's accused pet mat, which operates in the same manner as the prior art before the PTAB. The composition in Maze's accused pet mat and the prior art does not undergo any reaction upon the application of pressure. Rather, when a warmer object contacts the cooler gel mat, the gel mat absorbs the excess heat until the two reach equilibrium. In other words, if an

object exerts a pressure on the mat but is at the same temperature as the mat, there will be no transfer of heat and no endothermically reversible chemical reaction. There is simply <u>no chemical reaction</u> that takes place upon the application of "pressure" as required by every Asserted Claim. Accordingly, Maze filed for IPR to invalidate the '218 Patent in view of Green Pet's broad reading of the claim scope, however, the PTAB confirmed that the claim scope must be narrowly read even under the broadest reasonable interpretation standard applied by the PTAB.

## III. LEGAL STANDARD

Patent claims define the bounds of an invention, and district courts construe these claims as a matter of law to determine their meaning and scope. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The appropriate starting point for claim construction is always the words of the asserted claims themselves, for it is the claims of the patent that define the scope of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

"Claim language is generally given its 'ordinary and customary meaning,' that is, 'the meaning that the language would have to a person of ordinary skill in the art in question at the time of the invention.'" *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1368 (Fed. Cir. 2010). Since patent claims do not stand alone, but rather "are part of 'a fully integrated written instrument,' consisting principally of a specification," a person of ordinary skill in the art "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313, 1315 (citations omitted).

The prosecution history should also be consulted in construing the meaning of a claim term. *Id.* at 1317. "[T]he prosecution history provides evidence of how the PTO and the inventor understood the patent." *Id.* Furthermore, "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention." *Id.* In this regard, arguments and amendments made during prosecution "to overcome prior art can lead to narrow claim interpretations because '[t]he public has a right to rely on such definitive statements.'" *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002) (citations omitted). Claims cannot "cover subject matter broader than that which the patentee itself regarded as comprising its inventions and represented to the PTO." *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004). The record of an IPR of a patent becomes part of its prosecution history. *Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. C-13-03587, 2014 WL 4802426 (N.D. Cal. Sept. 26, 2014).

## IV.    CONSTRUCTION OF DISPUTED TERMS

### A.    Person Of Ordinary Skill In The Art

Claim terms are viewed from the perspective of a person of ordinary skill in the art. *Lazare Kaplan*, 628 F.3d at 1368. In response to Maze's interrogatories, Green Pet asserts that one of ordinary skill in the art should have experience in "powered system activation devices." JA0536–537. Green Pet provides no support for this assertion and, importantly, the Patents-in-Suit have no relation to "powered systems" at all.[3]

---

[3]    Green Pet appears to have copied this language from *Ryko Mfg. Co. v. Nu-star, Inc.*, 950 F.2d 714 (Fed. Cir. 1991), without tailoring the language to the issues presented in this case. *Id.* at 718 ("Probative of the required level of skill in the art are factors such as . . . educational level of those who work in the industry which manufactures <u>powered system activation devices</u> . . ." (emphasis added)).

Rather, from the "Field of the Invention" of the Patents-in-Suit, and the Patents-in-Suit themselves, it is evident that a person of ordinary skill in the art at the time of filing had at least some experience with cooling pad techniques and chemistry related thereto, with a general understanding of endothermic reactions. *See, e.g.*, JA0009 ("[I]nvention relates to temperature controlled platforms.").

**B.      Claim Terms Of The Patents-in-Suit To Be Construed**

Independent Claims 15, 16, 18, and 19 of the '218 Patent and Independent Claims 1, 11, and 16-21 are asserted in this litigation and the disputed claim terms appear in each of these claims. JA0012; JA0206–207. Claim 15 of the '218 Patent is representative for purposes of claim construction:

> 15. A cooling platform for cooling an object, the platform comprising:
>
> a temperature regulation layer, the temperature regulation layer having an angled segment formed by a top side and a bottom side at a predefined distance, and channels, wherein the channels form sides by contacting the top side with the bottom side; and
>
> **a pressure activated <u>recharging</u> cooling composition** within the temperature regulation layer, **the pressure activated recharging cooling composition <u>endothermically activated</u> and <u>endothermically deactivated</u> upon the application and release of pressure**, respectively.

JA0012 (emphasis added). Maze proposes construction of the claim phrases in bold and the claim term "pressure" in Claim 15 above. Green Pet proposes only to construe the portions of the claims phrases that are underlined above. The parties' proposed constructions for the disputed claim terms are provided in the table below.

| Claim Term[4] | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| pressure | force per unit area | no proposed construction |
| a pressure activated <u>recharging</u> cooling composition | a composition that undergoes a reversible chemical reaction upon the application and release of pressure | reversing |
| the pressure activated recharging cooling composition <u>endothermically activated</u> . . . upon the application . . . of pressure | the composition decreases in temperature when pressure is applied | absorbs heat |
| the pressure activated recharging cooling composition . . . <u>endothermically deactivated</u> upon the release of pressure | the composition increases in temperature when pressure is released | releases heat |

Green Pet has refused to provide constructions for the additional terms that form the complete phrases proposed by Maze as would normally be required by the Local Patent Rules. As a result, Maze has been unable to identify where additional disputes, if any, lie prior to filing its opening claim construction brief. Maze has endeavored to discern Green Pet's positions based on its contentions and discovery responses to date, and addresses its best guesses as to Green Pet's proposed constructions herein. Nonetheless, Maze will know Green Pet's positions on the additional terms for the first time only after reading Green Pet's responsive claim construction brief, and Maze reserves the right to address any additional constructions Green Pet proposes in Maze's reply brief as needed.

---

[4]    As previously discussed, Maze proposes the entire claim phrase be construed, while Green Pet only proposes to construe the underlined portion.

### 1. Pressure

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| pressure | force per unit area | no proposed construction |

As discussed above, the result of the '117 IPR challenging the Asserted Claims of the '218 Patent turned on the PTAB's construction of the term "pressure." JA0496–506. Given that Maze's pet mat products operate in the same manner as the prior art it submitted to the PTAB, Maze believes the term is key in resolving the issues in this case. Consistent with the PTAB's construction (and that argued by Green Pet), Maze proposes that the term "pressure" should be construed as "force per unit area." JA0498. This construction is also supported in the intrinsic record of the Patents-in-Suit.

During the IPR, Green Pet argued that the use of the term "exert" in the Patents-in-Suit "is consistent with the ordinary meaning of 'pressure' and the 'application of force.'" JA0465. Green Pet further admitted and argued that "pressure" is "the application of force over an area." JA0463. In its Final Written Decision, the PTAB agreed with Green Pet's arguments and construed "pressure" as "force per unit area." JA0497.

The PTAB's construction of "pressure" comports with the intrinsic record and the plain and ordinary meaning of that term. Specifically, the Patents-in-Suit disclose that pressure is exerted on a platform by the "weight of the object." JA0010 at 4:42–49; JA0204 at 2:64–67. The '218 Patent provides that an "object contacts the channeled covering layer 150 exerting pressure over the cooling platform," that "the pressure of a[n] object sitting on the cooling platform 100 activates the composition 110A," that "[u]pon the release of that pressure, the composition 110 undergoes a subsequent recharge," and that a "predefined distance . . . essentially prevents the dispersion of the composition 110A from the pressure the object exerts

10

on the cooling platform 100." JA0011–12 at 3:17–25, 4:42–49, 5:19–27. Given these disclosures, the PTAB's finding that "pressure" means "force per unit area" should be adopted.[5] JA0497 (citing Gordon J. Van Wylen & Richard E. Sonntag, *Fundamentals of Classical Thermodynamics*, § 2.7 (3d ed. 1986)).

Therefore, consistent with the intrinsic record, "pressure" should be construed as "force per unit area."

## 2. A Pressure Activated Recharging Cooling Composition

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| a pressure activated <u>recharging</u> cooling composition | a composition that undergoes a reversible chemical reaction upon the application and release of pressure | reversing |

Maze proposes that the phrase "a pressure activated recharging cooling composition" should be construed as "a composition that undergoes a reversible chemical reaction upon the application and release of pressure." The intrinsic record mandates Maze's proposed construction.

The specification of the '218 Patent describes the "pressure activated recharging cooling composition" consistent with Maze's proposed construction:

> In another embodiment, the composition 110A can be activated by pressure, wherein the pressure of a[n] object sitting on the cooling platform 100 activates the composition 110A, triggering an endothermic process and subsequent cooling. Upon the release of that pressure, the composition 110A undergoes a subsequent recharge, essentially <u>the reverse of the initial reaction</u>. The above is consistent with Le Chatelier's principle, in that, <u>the reaction reverses</u> upon the application or absence of pressure.

---

[5] The standard for claim construction at the PTAB is the "broadest reasonable interpretation." *In re Cuozzo Speed Techs., LLC*, 778 F.3d 1271, 1281 (Fed. Cir. 2015). Thus, the construction adopted in district court must be either the same or narrower in scope as the construction the PTAB adopts.

JA0010 at 3:17–25 (emphasis added). Accordingly, the specification talks about an initial reaction that takes place with pressure and a reverse reaction that takes place when pressure is removed.

Further, Green Pet's arguments and amendments made during the prosecution of the '218 Patent mandate Maze's proposed construction. *See Rheox*, 276 F.3d at 1325 (arguments and amendments made during prosecution "to overcome prior art can lead to narrow claim interpretations because '[t]he public has a right to rely on such definitive statements'"). Green Pet told the Patent Office during prosecution that this claimed reversible reaction is a chemical reaction and used this argument to obtain allowance of its claims. This is the type of definitive statement Maze and the public have a right to rely on in interpreting the scope of the claims of the Patents-in-Suit.

Specifically, during prosecution of the '218 Patent, the claims were rejected over the Rabenbauer, Gatten, Augustine, Omidian, and Dimmitt references. JA0112–126. To overcome these rejections, Green Pet added the phrase "pressure activated recharging cooling composition" to every claim. JA0057–65. Green Pet also added the language "the pressure activated recharging cooling composition activated and deactivated upon the application and release of pressure, respectively." JA0062–64 (emphasis added).[6] Based on these amendments, Green Pet asserted that its claims were now allowable.

For example, as discussed above, Green Pet asserted during prosecution that the Omidian prior art reference did not "disclose any terms identical or relating to the application and release of pressure to drive a chemical reaction to decrease and increase in temperature." JA0102 (emphasis added). Thus, the focus of Green Pet's argument to distinguish Omidian was the fact

---

[6]   Asserted Claims 15, 16, 18, and 19 of the '218 Patent are prosecution claims 21, 22, 24, and 25, respectively.

that its claims described a chemical reaction occurring upon the application of pressure and a reversible chemical reaction when the pressure was released. This is confirmed again in additional statements Green Pet made to the Patent Office: "Applicant respectfully disagrees that stretching and unloading discloses the application and release of pressure to drive a reversible chemical reaction." JA0102 (emphasis added); *see also id.* (arguing that "stretching and unloading in Omidian refers to the elasticity and resiliency of the hydrogel hybrid," which "is not the same as the application and release of 'pressure,' further, the application and release of pressure to drive a chemical reaction" (emphasis added)).

Green Pet's arguments were successful in overcoming the art of record, including the Omidian reference, and specifically led to the issuance of the Asserted Claims. Green Pet's arguments are consistent with its IPR arguments and the finding of the PTAB that the "application and release of pressure by an object on its gel pad activates and deactivates, respectively, its cooling composition, as required by the challenged claims." JA0500. Green Pet unambiguously repeated that the claim phrase "a pressure activated recharging cooling composition" necessarily requires a composition that undergoes a chemical reaction upon the application and release of pressure, and that this chemical reaction must be reversible. JA0101–102. This is the construction proposed by Maze, and it is the only construction the intrinsic record supports.[7]

---

[7] Green Pet's arguments during the prosecution of the '218 Patent apply equally to limit the scope of the claim terms in the '474 Patent because the '218 Patent is the parent of the '474 Patent. *Biovail Corp. Int'l v. Andrx Pharm., Inc.*, 239 F.3d 1297, 1301 (Fed. Cir. 2001) (providing that prosecution history applying to a limitation added during prosecution of the parent application "applies with equal force" to same limitation appearing in a similar context in a continuation application).

Therefore, consistent with the intrinsic record, "a pressure activated recharging cooling composition" should be construed as "a composition that undergoes a reversible chemical reaction upon the application and release of pressure."

### 3. Endothermically Activated . . . Upon The Application . . . Of Pressure

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| the pressure activated recharging cooling composition <u>endothermically activated</u> . . . upon the application . . . of pressure | the composition decreases in temperature when pressure is applied | absorbs heat |

Maze proposes that the phrase "the pressure activated recharging cooling composition endothermically activated . . . upon the application . . . of pressure" be construed as "the composition decreases in temperature when pressure is applied." This construction is consistent with and mandated by the intrinsic record.

As discussed above, to overcome prior art rejections, Green Pet added the following claim language: "the pressure activated recharging cooling composition activated and deactivated upon the application and release of pressure, respectively." JA0062–64. The Examiner suggested, and Green Pet accepted, a further amendment to this language. Specifically, the Examiner proposed to replace "composition activated and deactivated" with "composition endothermically activated and endothermically deactivated." JA0032–33. The issued claims include the amendment and the full language of the phrase for each of the Asserted Claims is "the pressure activated recharging cooling composition endothermically activated and endothermically deactivated upon the application and release of pressure, respectively." *See*, *e.g.*, JA0012 at cl. 15.

14

For purposes of this claim element, Maze has proposed that the phrase "the pressure activated recharging cooling composition endothermically activated . . . upon the application . . . of pressure" be construed. This is the portion of the claimed phrase that focuses on the composition being endothermically activated upon the application of pressure. During prosecution, Green Pet convinced the Examiner that this phrase meant "a composition that decreases in temperature when pressure is applied." JA0094–95 (emphasis added). Green Pet made this argument in the context of distinguishing the claimed invention over the prior art Omidian reference. Green Pet made this same argument at least twice more during prosecution. For example, Green Pet stated that "Omidian does not expressly, implicitly, or inherently disclose…a composition that decreases in temperature upon pressure activation . . . as claimed in Applicant's invention. JA0101 (emphasis added). Green Pet further stated that in view of the claims "as amended, Omidian does not disclose any terms identical or relating to the application and release of pressure to drive a chemical reaction to decrease . . . in temperature." JA0102 (emphasis added).

Green Pet's arguments to the Patent Office mandate that the phrase "the pressure activated recharging cooling composition endothermically activated . . . upon the application . . . of pressure" be construed as "the composition decreases in temperature when pressure is applied." *See Rheox*, 276 F.3d at 1325 (arguments and amendments made during prosecution "to overcome prior art can lead to narrow claim interpretations because '[t]he public has a right to rely on such definitive statements'"). This is the only construction supported by the intrinsic record and it is the construction the Examiner relied upon in allowing the Asserted Claims.

### 4. Endothermically Deactivated Upon The . . . Release of Pressure

| Claim Term | Defendant's Construction | Plaintiff's Construction |
|---|---|---|
| the pressure activated recharging cooling composition . . . <u>endothermically deactivated</u> upon the release of pressure | the composition increases in temperature when pressure is released | releases heat |

Maze proposes that the phrase "the pressure activated recharging cooling composition…endothermically deactivated upon the release of pressure" of the Asserted Claims be construed as "the composition increases in temperature when pressure is released." Like its "endothermically activated" counterpart, this construction is consistent with and mandated by the intrinsic record.

As discussed above, to overcome prior art rejections, Green Pet added the following claim language: "the pressure activated recharging cooling composition activated and deactivated upon the application and release of pressure, respectively." JA0062–64. The Examiner suggested, and Green Pet accepted, a further amendment to this language. Specifically, the Examiner proposed to replace "composition activated and deactivated" with "composition endothermically activated and endothermically deactivated." JA0032–33. The issued claims include the amendment and the full language of the phrase for each of the Asserted Claims is "the pressure activated recharging cooling composition endothermically activated and endothermically deactivated upon the application and release of pressure, respectively." *See*, *e.g.*, JA0012 at cl. 15.

For purposes of this claim element, Maze has proposed that the phrase "the pressure activated recharging cooling composition . . . endothermically deactivated upon the release of pressure" be construed. This is the portion of the claimed phrase that focuses on the composition

being endothermically deactivated upon the release of pressure. During prosecution, Green Pet convincingly argued to the Patent Office that "endothermically activated" meant "a composition that decreases in temperature when pressure is applied." JA0094–95. In the same vein, Green Pet argued that "endothermically deactivated" meant that the "composition . . . recharges when pressure is released." JA0094–95; *see also* JA0101 ("[A] composition that decreases in temperature upon pressure activation; and recharges on the release of that pressure - as claimed in Applicant's invention."). Green Pet's arguments confirm that "recharges" is referring to an increase in temperature. Specifically, Green Pet argued that in view of the claims "as amended, Omidian does not disclose any terms identical or relating to the application and <u>release of pressure</u> to drive a chemical reaction to decrease and <u>increase in temperature</u>." JA0102 (emphasis added). This increase is temperature is the reverse of the initial chemical reaction that Green Pet described as a decrease in temperature. JA0102; *see also* JA0010 at 3:17–25.

Green Pet's arguments to the Patent Office mandate that the phrase "the pressure activated recharging cooling composition . . . endothermically deactivated upon the release of pressure" be construed as "the composition increases in temperature when pressure is released." *See Rheox*, 276 F.3d at 1325 (arguments and amendments made during prosecution "to overcome prior art can lead to narrow claim interpretations because '[t]he public has a right to rely on such definitive statements'"). This is the only construction supported by the intrinsic record and it is the construction the Examiner relied upon in allowing the Asserted Claims.

## V.    CONCLUSION

For the reasons set forth above, Maze respectfully requests that this Court adopt its proposed constructions of the claims terms at issue.

17

Dated:  August 11, 2016                    Respectfully submitted,

                                            /s/ Jason A. Engel
                                           Jason A. Engel
                                           Devon C. Beane
                                           Stephanie J. Nelson
                                           K&L Gates LLP
                                           70 W. Madison Street, Suite 3100
                                           Chicago, Illinois  60602-4207
                                           Telephone:  (312) 372-1121
                                           Facsimile:  (312) 827-8000

                                           *Attorneys for Defendant Maze Innovations, Inc.*

## CERTIFICATE OF SERVICE

It is hereby certified that on this 11th day of August, 2016, a copy of the foregoing document was filed electronically with the Clerk of Court to be served via the Court's Electronic Filing System upon the following counsel of record:

Maria C Granjean
Gordon & Rees, LLP
1 North Franklin St., Suite 800
Chicago, IL 60606
(312) 565-1400
Email: mgranjean@gordonrees.com

Reid Eric Dammann
Gordon & Rees LLP
633 West Fifth Street
52nd Floor
Los Angeles, CA 90017
(213) 576-5000
Fax: (213) 680-4470
Email: rdammann@gordonrees.com

Stephanie Frances Jones
Gordon & Rees LLP
1 North Franklin
Suite 800
Chicago, IL 60606
(312) 565-1400
Email: sfjones@gordonrees.com

Grant Blumenthal
Blumenthal Law Group PC
180 N. LaSalle Street
Suite 3700
Chicago, IL 60601
(312) 981-5055
Fax: (312) 416-7963
Email: gblumenthal@blumenthal-law.com

/s/ Jason A. Engel
Jason A. Engel

19